J-S44002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.L.L. A/K/A T.L.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.F.P. | : | |
| | : | |
| Appellant | : | No. 956 EDA 2018 |

Appeal from the Order March 22, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  OC1000744

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 27, 2018**

R.F.P. (Father) appeals, *pro se*, from the order denying his petition to modify custody of his three minor children, R.P., S.P., and E.P.  After careful review, we affirm.

The trial court summarized its findings of fact as follows:

Father and [T.L.L. (a.k.a. T.L.P.), (Mother)] share physical and legal custody of three minor children—R.P., S.P, and E.P.  The two younger children follow a weekly shared physical custody arrangement with the custodial exchange between parents on Friday.  The eldest child[, R.P.,] has a slight deviation in the shared physical custody arrangement.  R.P. spends every Thursday night to Friday night with Mother.  Accordingly, when R.P. is with [] Father the custodial exchange to Mother is Thursday night.  This arrangement has been in place since the order dated December 22, 2015, which was affirmed by the Superior Court in **T.L.L., a/k/a T.L.P. v. R.F.P.**, No. 285 EDA 2016.

Father requested a re-establishment of the fifty/fifty custodial arrangement with all three children, thus eliminating R.P.'s Thursday night to Friday night custodial time with Mother during Father's custodial week.  Father asserted in support of a

modification: (1) R.P. is deprived of fifteen [percent] of his weekly custodial time with Father; (2) the purpose of the December 22, 2015 modification, for R.P. to go to counseling, is not being fulfilled, and (3) R.P. is "thirteen years old now, and as an adolescent, he needs more of his father in his life." Father testified credibly that he teaches his children values, he helps the children with their homework, he takes them to visit extended family, and he encourages his children to do things that are in their best interest.

Mother sought primary physical custody. In her petition Mother assert[ed] that Father is emotionally abusive to the three children. Mother gave opinion testimony and described conversation she had with the children to support her petition, but the allegation in the petition was not substantiated at trial. Mother testified credibly about R.P.'s counseling. R.P.'s initial contact with the counselor was for aggressive behavior and 'skin picking.' R.P.'s aggression has greatly improved, but the 'skin picking' continues. R.P.'s next counseling sessions were for academic issues, and to focus on getting R.P. in a better routine at home. R.P. is currently on a waiting list with the University of Pennsylvania for the 'skin picking' issue.

One joint exhibit regarding R.P.'s diagnoses for treatment, treatment dates, and treatment plan was submitted at trial.

Trial Court Opinion, 4/30/18, at 2-3.

Father originally filed a motion for recusal of the trial judge and a petition to modify custody on June 30, 2017. Mother filed a petition to modify custody on March 5, 2018, asking for full custody of the children. Father filed his answer to Mother's petition on March 13, 2018. After a trial held on March 19, 2018, the trial court denied Father's motion for recusal and held the custody matter under advisement. Subsequently, the trial court denied Father's and Mother's respective petitions, leaving the custodial arrangement unchanged from the December 22, 2015 custody order (the "custody order"). Father filed a timely appeal and a Pa.R.A.P. 1925(b) concise statement of

errors complained of on appeal. Father presents the following issues for our review:

> 1. Did the [trial court] impermissibly permit [Mother] to introduce inadmissible hearsay in the form of alleged statements of the parties' children?
>
> 2. Did the [trial court] impermissibly order the parties to disobey the law regarding parental communication, and to rely instead on [the trial court's] own personal beliefs regarding parental communication?

Appellant's Brief, at 3.

Our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.J.B. v. A.G.B.*, 180 A.3d 1263, 1269-70 (Pa. Super. 2018) quoting *C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012). As this Court explained in *Ketterer v. Seifert*, 902 A.2d 533 (Pa. Super. 2006), "[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." *Id.* at 540.

The paramount concern in child custody matters is the best interests of the children. *McMillen v. McMillen*, 602 A.2d 845, 846 (Pa. 1992). "A modification of custody is not warranted merely because one parent is unhappy with the existing arrangement. Thus, we repeatedly have emphasized that a party requesting modification must prove that the alteration of an existing custody arrangement is in the child's best interest." *Jackson v. Beck*, 858 A.2d 1250, 1252 (Pa. Super. 2004). In considering custody determinations, the trial court should consider all relevant factors. *See* 23 Pa.C.S. § 5328 (a)(1)—(16).[1]

Father first argues the admission of the children's out-of-court statements to Mother constituted inadmissible hearsay. A trial court's rulings on the admission of evidence are within its sound discretion. *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014). Thus, a court's decision to admit evidence will not be overturned "absent an abuse of discretion or misapplication of law." *Id.* For a ruling to constitute reversible error, it must have been harmful or prejudicial to an appellant. *Id.* Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Pa.R.E. 801(c). As a general rule, hearsay is inadmissible, because it lacks the

---

[1] This section lists factors such as the need for stability and continuity in the children's education, family life, and community life; the child's sibling relationships; the well-reasoned preferences of the children; the level of conflict between the parents, along with their willingness and ability to cooperate with one another; and any other relevant factor.

guarantees of trustworthiness fundamental to our system of jurisprudence. ***Commonwealth v. Rush***, 605 A.2d 792, 795 (Pa. 1992).

Mother, when asked why she sought full custody of her children, stated her opinion that Father "has moments that are irregular, and above the norm when it comes to rage. I think his expectations of the children are beyond that of a typical father." N.T. Trial, 3/19/18, at 44. Mother based this opinion on things the children "come back and tell me." ***Id.*** at 44-45. Over Father's objections, the trial court permitted Mother to testify about the out-of-court statements the children allegedly made to her regarding Father.

This testimony was plainly hearsay. However, as the trial court stated, "[s]ince the statements were not corroborated by later testimony [from the children,] the trial court gave no weight to the statements, nor did the trial court consider the statements in denying Father's petition to modify custody." Trial Court Opinion, 4/30/18, at 12. Therefore, because Father was not prejudiced, the court's error was harmless. ***See In re M.T.***, 607 A.2d 271, 281 (Pa. Super. 1992) (admission of hearsay statements of children was harmless error where statements of children did not contribute to trial court's decision); ***see also Knowles v. Levan***, 15 A.3d 504, 507 (Pa. Super. 2011) (in order for ruling on admissibility of evidence to constitute reversible error, it must have been harmful or prejudicial to complaining party).

Father next argues the trial court "impermissibly ordered the parties to disobey the law regarding parental communication, and to rely instead on [the trial court's] own personal beliefs regarding parental communication."

Appellant's Brief, at 20 (capitalization omitted). Because Father's petition to modify custody was denied, the trial court upheld the custody order; thus, his second argument stems from the language therein, which states, "the parties are not to strive for 'minimal cooperation' but rather full co-parenting skills." Custody Order, 12/22/15, at 3.

Coordinating shared custody requires a "minimal degree of cooperation between the parents." **B.C.S. v. J.A.S.**, 994 A.2d 600, 603 (Pa. Super. 2010). A minimal degree of cooperation does not

> translate into a requirement that the parents have an amicable relationship. Although such a positive relationship is preferable, a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor.

**Id.** (quoting **In re Wesley J. K.**, 445 A.2d 1243, 1249 (Pa. Super. 1982)). Further, as noted by this Court, the rule "requiring parents have a minimal degree of cooperation can be found [within the current child custody statute,[2]] at [section 5328](a)(13), requiring that trial courts consider, among other things, the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." **J.C. v. J.W.**, 179 A.3d 617 (Pa. Super. 2017).

---

[2] **See** 23 Pa.C.S. §§ 5321-5340.

Regardless, this issue has already been decided in a prior decision of this Court, and therefore Father is collaterally estopped from raising it again in this matter. Collateral estoppel, also known as issue preclusion

> operates to prevent questions of law or issues of fact which have once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit. Collateral estoppel is applicable when: (1) [a]n issue decided in a prior action is identical to one presented in a later action; (2) [t]he prior action resulted in a final judgment on the merits; (3) [t]he party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) [t]he party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Nelson v. Heslin*, 806 A.2d 873, 876-77 (Pa. Super. 2002). In 2016, Father argued against this same language in his appeal to this Court, asking "[w]hether the [trial] judge impermissibly relied on [its] own personal beliefs with respect to parental communication and, in so doing . . . expressly refused to follow this court's binding standard of 'minimum of communication' between custodial parties." Appellant's Prior Brief, 7/19/16, at 3, quoted in *T.L.L. v. R.F.P.*, 285 EDA 2016 (Pa. Super., filed 2/14/17). Relying on the trial court's reasoning that the communication requirements were necessary to prevent the children from being exposed to "unnecessary, duplicative medical appointments; frustration from conflicting extracurricular activities, and/or the burden of unnecessary, duplicative work on school projects," this Court found Father's claim lacked merit. *T.L.L.*, at *3.

Father is now precluded from raising this issue. Father contests the identical language of the same custody order before this Court for a second

- 7 -

time. The previous decision of this Court was decided on the merits, and resulted in a final judgment that denied Father relief for this specific issue. Father was, of course, a party to the prior action, and had a full and fair opportunity to litigate this issue.[3] ***Nelson***, ***supra***.

Father also argues in his brief that the court erred in denying his motion to recuse the trial judge, the Honorable Holly J. Ford, urging this Court to order her recusal because of "impropriety." Appellant's Brief, at 15-19. Father failed to include this claim in his court-ordered Rule 1925(b) statement, and therefore it has not been preserved for our review. ***See Yates v. Yates***, 963 A.2d 535, 542 (Pa. Super. 2008) (finding father's argument waived for failure to include it in Rule 1925(b) statement); ***see also*** Pa.R.A.P. 1925(b)(4)(vii).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/18

---

[3] Even if the issue had not been previously litigated and decided, the language of the December 22, 2015 custody order hardly amounts to the judge imposing her own personal beliefs upon Father. Rather, it is a goal of the trial court for the parents to "strive" for "full co-parenting skills." There is no evidence in the record to suggest that Father was at all aggrieved by this language in the order.